# SUPREME COURT.

## JOHN JAMES COLE agt. WILLIAM P. COLE, Jr., executor of the last will and testament of JOHN R. COLE, deceased.

*Motion for a new trial on the ground of newly discovered evidence.*

When the alleged new evidence is of the same character as that offered upon the former trial it is *cumulative;* but when it tends to prove a new fact bearing upon the issue made by the pleadings it is not. It must, of course, be important in its bearing upon the question in dispute, otherwise the new trial should not be granted.

It must also appear that by no diligence which could be required of a party could the new evidence have been discovered previous to the former trial.

If it appears that the proposed evidence is of a highly important character and bears directly upon the very issue in the cause, notwithstanding, a new trial will not be granted if such evidence is to be given by a witness not entitled to credit, or is not so supported by other facts and circumstances as would justify a jury in believing the story of the principal deponent.

Where it appeared that the proposed witness on the new trial would testify that in May, 1871, he forged and wrote, at the request of the plaintiff, the name of John R. Cole (the testator) upon the note in suit, and made recently for this motion affidavit of that fact; and it also appeared that this proposed witness at the time he alleged he forged this note, in May, 1871, was an inmate of the state prison at Sing Sing, having been sentenced there for eight years for the crime of forgery; and it further appeared that since the year 1852, over twenty years, he had been almost a constant resident of state prisons for the crime of forgery, and was at this time (July, 1875) confined in the state penitentiary of Pennsylvania under a sentence for nine years and six months for the crime of forgery; and the corroborating facts and circumstances to uphold this proposed testimony being insufficient to give it any legitimate support:

*Held,* that no rule of law and no principle of judicial fairness would justify the court in overturning a verdict fully sustained by credible testimony in order to submit to another jury the question whether they would not believe what must, on a trial, be the unsustained evidence of a profes-

sional forger of over twenty years' standing, than that of reputable witnesses.

Where a person having been in state's prison for a crime has been restored to his rights as a citizen in this state by the act of the chief executive thereof, his conviction in another state would not, probably, render his evidence here inadmissible.

*Ulster Special Term, July,* 1875.

Motion by defendants, on a case and affidavits claiming newly discovered evidence, for a new trial.

*D. M. Dewitt & Wm. Lawton,* for defendant and the motion.

*A. Schoonmaker, Jr., & A. T. Clearwater,* for plaintiff and opposed.

Westbrook, *J.* — This cause was tried at the last (April, 1875), Ulster circuit, and the plaintiff had a verdict for $6,505.90.

The action was upon a promissory note, purporting to be made by John R. Cole, deceased, bearing date December 31, 1870, whereby the alleged drawer promised to pay John J. Cole, or order, one day after date, the sum of $5,000, with interest. It was commenced against the defendant, as the executor of the last will and testament of the deceased, after the death of the said John R. Cole, which death occurred during the year 1871. The defense alleged that the signature to the note was not the handwriting of the deceased, and whether such signature was genuine or forged was the principal if not the only, question litigated upon the trial. The jury, by their verdict, having found the authenticity of the note, the defendant upon a case containing the evidence taken upon, and the proceedings of the trial, and sundry affidavits claiming the discovery of new and important evidence, moves for a new trial. The motion is resisted by the plaintiff upon opposing affidavits, and the questions presented are, whether

the alleged newly discovered testimony is of such a nature and character, and can be sustained by witnesses of such character as will justify the court in the exercise of a sound discretion in granting the application. The central and pivotal allegation contained in the moving papers is, that while one John A. Canter was confined in the state prison at Sing Sing, for the crime of forgery, and during, or about the month of May, 1871, the plaintiff visited the prison, had an interview with said Canter, and induced him to write and forge the name of the alleged maker to the note in suit. The affidavit of Canter, read upon the motion, positively avers these facts to be true; and the other affidavits on the part of the defendant establish that he and his counsel were entirely ignorant thereof until after the trial.

In the determination of the question whether a new trial should be granted upon newly discovered evidence, the rule urged by the counsel of the plaintiff, that the new evidence should not be *cumulative*, undoubtedly prevails. The meaning, however, which such counsel give to the word "cumulative" is not that which its use in the rule was designed to express. Evidence bearing upon the same issue in a cause is scarcely ever of the same character. Very often the existtence or non-existence of the facts upon which the cause turns depends upon a number of other independent ones, from which the former are inferred. When the alleged new evidence is of the same character with that offered upon the former trial it is cumulative, but when it tends to prove a new fact bearing upon the issue made by the pleadings it is not. It must, of course, be important in its bearing upon the question in dispute, otherwise the new trial should not be granted; and if the word "cumulative," in the rule, means that no new trial should be granted when the evidence to be produced relates to the issue made by the pleadings, the result would be the refusal of the application in every instance, for such evidence should tend to establish a material and not an immaterial fact. The defendant, upon the trial, sought to

establish the falsity of the note by the evidence of experts in writing, and by the absence of the deceased from the place where the execution of the note was located by the plaintiff's evidence, at the time of such alleged execution, and he gave no positive and direct evidence of the forgery thereof. If the evidence hereafter to be introduced, in case a new trial should be granted, was merely that of an additional expert, or of a single new witness to establish the absence of the deceased from the alleged scene of the making of the instrument, it would be cumulative, and a new trial would be refused for that reason; as it is not, however, but, on the contrary, is evidence of an entirely different character from any given upon the trial by the defendant, the preliminary objection of the plaintiff cannot be sustained.

It is evident, also, that by no diligence which can be required of a party, could this new evidence have been discovered previous to the former trial. The affidavit of Fordyce L. Laflin fully discloses how the defendants' counsel became possessed of the alleged new facts, the same being communicated to them by such affiant, whose recollection thereof was recalled by reading the proceedings of the trial in the newspapers, and such communication was not made until the verdict had been rendered.

The evidence, also, is of a highly important character, and as it bears directly upon the very issue in the cause, I should not hesitate to grant a new trial, if it was to be given by a credible witness, or was so supported by other facts and circumstances as would justify a jury in believing the story of the principal deponent. To these questions, the argument must be addressed, and accordingly as they are answered must the present application stand or fall.

Before, however, referring to the facts alleged in the papers used upon this application, it will be necessary to see how the case stood upon the evidence given upon the trial. The same number of experts (ten), give evidence upon each side, and the plaintiff, in addition, introduced the following testimony:

First. Blandina Cole, the wife of the plaintiff, testified that there was a family dinner at the house of her husband on the day of the execution of the note (December 31, 1870), at which the deceased, who was the father of the plaintiff and the defendant, was present. That after the dinner was over, the deceased remained in the dining-room with her husband and herself, the others having gone out, and then and there executed and delivered the note to the plaintiff, handing it to her, telling her to keep it, and that it would be good some day.

Second. Alonzo F. Babcock testified that a few days before August 26, 1864, a conversation. in substance, took place between the deceased and himself, as follows: The witness said to Mr. Cole that he had given to his two sons, Charles and William, a couple of nice farms. To this Mr. Cole answered, that he had given the plaintiff $6,000 when he began, and told him to help himself. The witness replied, that the plaintiff had not had as much as the rest, to which Cole rejoined: "My wife and I have come to the conclusion to give him $5,000 or $6,000 more."

Third. Peter R. Elting testified that in the summer of 1869 he talked with the deceased about taking a policy of insurance upon his life, in the course of which, Mr. Cole said he had agreed with his wife to give John James (the plaintiff), $5,000, and, perhaps, an insurance upon his life would be a good way to pay it. In another conversation with the witness, some time after this, the deceased said he had done with John James as he had promised his wife he would do, when she gave to him a deed of her real estate; he had given him a note for the sum, and that he could not do it by a life insurance policy, as William (the defendant), would not let him.

Fourth. Horace Maxon said, that in a conversation which he had with the deceased in 1871, the latter remarked that he had given John James $6,000 when he started; that this, however, was not his proportion, and that he had made

arrangements with his wife to give him $5,000 more ; and he further said (the witness did not remember the exact expression) that he had given or would give the plaintiff a note for that amount.

Fifth. John Plough testified, that during the year 1868, John R. Cole told the witness he had his property all arranged ; that he had given to William the homestead, and to Charles, the place where he lived ; that he had given to the plaintiff $6,000, and if his son was worth $6,000 to him, Cornelius Oliver's daughter (the wife of plaintiff, meaning) ought to be worth $5,000 to him. Oliver had, however, done nothing, and he (Cole) and his wife had concluded to give the plaintiff $5,000 more. At another time, the same witness said, he overheard the late Senator Hardenburgh say to Mr. Cole: "Whatever you want to give your boy John James, give him a note for it." The witness further testified, that Mr. Cole, during the year 1871, told him that he had given the plaintiff "$5,000 or his note for it."

Sixth. Cornelius B. Sutton testified, that the deceased, in a conversation with the witness, spoke of what his sons "Charles and Billy" were to have. To which the witness answered, "John James is in debt." To which Mr. Cole replied: "When I am done, John James will be free of debt."

Seventh. Andrew E. Jansen testified, that the deceased told him, he had given each of his boys a farm, and to make John James equal with the rest, he had given him a note for $5,000.

This, in substance, is the affirmative evidence given on the part of the plaintiff upon the trial, in addition to the evidence of the ten experts who testified that in their opinions the signature to the note was the proper and genuine writing of the deceased. Much of the details of the evidence, consisting largely of the motives and agreement with his deceased wife, which induced the testator to make and deliver the note, are omitted in the statement given. It will be apparent

to any mind, that the plaintiff made upon the trial a very strong, if not an overwhelming case. One witness testified to the execution of the note by the deceased testator in her presence, and six others testify to admissions and declarations made by him, which exceedingly fortify and sustain the direct proof of the execution. Neither of these witnesses is impeached or substantially contradicted. It is true a strong attempt was made to prove that the deceased was not at the house of the plaintiff on the day of the alleged execution of the note, and this was sustained by several witnesses, the principal of whom were the defendant and wife, and his brother Charles Cole and wife; but a still stronger array of witnesses and circumstances on the part of the plaintiff proved him there. When the case, then, was submitted to the jury, the evidence (stating it as favorable as possible for the defendant) was balanced, without throwing in the plaintiff's scales, that of Mrs. John J. Cole as to the execution of the note, and of the confessions hereinbefore stated. With that added, the result could not well have been different, though the verdict was reached by the jury, without the expression of an opinion by the court as to its weight. It is proper now, however, to state that the conclusion reached by the jury met with the approbation of the court, and that, in its opinion, a contrary result was scarcely possible.

It is now urged that the verdict sustained by such an amount of evidence should be overthrown, and the cause submitted to another jury, because upon such retrial, one John A. Canter will testify, that in May, 1871, he (Canter) forged and wrote at the request of plaintiff, the name of John R. Cole upon the note. When the act was done (if Canter's story is true) the forger was an inmate of the state prison at Sing Sing, where he was confined from June 19th, 1865 to the 19th day of May, 1873. The place of the alleged act, and the character of the act (if statement be true) ought to fix the moral status of the witness; but it may be well further to inquire, who this man Canter is, whose evidence, to be given upon another

trial, is urged as sufficient to overthrow a verdict, and worthy of being considered by another jury, of so great weight as to justify the rendition of a different one. On the 7th day of December, 1874, in the court of quarter sessions of the city and county of Philadelphia, state of Pennsylvania, under the name of Charles Ripley, alias Jack Canton, alias Charles Ostrander, this John A. Canter was convicted of the crime of forgery, and sentenced " to undergo imprisonment in separate or solitary confinement at labor in the state penitentiary for the eastern district of Pennsylvania, * * * for the term of nine years and six months, and * * * pay the costs of prosecution and stand committed until this judgment is fully complied with." The affidavit used upon this motion by the defendant (though nothing in the moving papers discloses the fact), was made in the prison to which he was thus sentenced, and where he is still confined. It is further shown that this individual has, since the year 1852, been almost a constant inmate of state prisons, for various crimes of forgery.

Canter having been restored to his rights as a citizen in this state by the act of the chief executive thereof, the conviction in another state would not, probably, render his evidence here inadmissible. (1 *Greenl. on Ev.* [*12th ed.*], sec. 396; *Commonwealth* agt. *Green,* 17 *Mass.,* 515). Character, however, is of little avail, if the testimony of such a witness is entitled to any weight. A residence of twenty years and over in state prisons for the crime of passing *written lies* (such all forgeries are) upon unsuspecting parties for the purpose of gain has certainly earned for the party a well established reputation for not telling the truth, and if his statement should now be believed in preference to that of reputable persons, then, certainly, all human rules for judging evidence are at fault, and common sense and common integrity of little value. Such a man, swearing too, probably, in the hope of obtaining a pardon thereby (though no promise or hope of that kind has been held out to him by honorable counsel, who would scorn the act), ought not to be believed by any court, or any

jury. The moral sense from which truth only can spring in such a creature is completely obliterated, and it shocks all our sense of justice to suppose, that statements which come from such lips can exercise any weight whatever in the administration of justice.

Upon the evidence of Canter alone, then, this verdict cannot be overturned. No court would be justified, for a moment, in assuming that any jury could believe the evidence of respectable witnesses false, and that of such a being true. The question still remains, however: Do the affidavits show that any evidence confirmatory of Canter's can be given upon a new trial? This will now be considered.

It is evident that what Mr. Fordyce L. Laflin knows cannot be evidence. According to his recollection, during the year 1871, one Mr. Russell, now deceased, then warden of the prison at Sing Sing, told him a Mr. Cole, of Ulster county, had seen Canter in the prison, and induced Canter to simulate the signature of Cole's father to a note. What Mr. Cole this was was not stated. As Russell is now dead, and his evidence cannot be procured, how the facts which Russell knew are to be shown is not apparent. Certainly the declarations to Laflin are not evidence upon any trial, and I know of no rule which makes them proper here. They certainly prove no fact whatever, and if mere declarations of third parties can be received either upon a trial or by affidavit in applications of this character in the administration of justice, the affidavit of Laflin, then proves nothing.

The affidavit of Mr. Casper C. Childs is, however, more important. He saw the man who was at the prison, and conversed with Canter. He did not know his name, but Canter told the witness his name was Cole, and his business then was to procure the forging of a note, and from a recent seeing of the plaintiff he believes him to be the man whom he saw at the prison.

If this was the only evidence given by this witness it would certainly go a great way in establishing the presence of the

plaintiff at Sing Sing under very suspicious circumstances. The plaintiff, however, produces a second affidavit of Mr. Childs, in which he states that all he meant to say in his former affidavit was, " that the plaintiff has a resemblance to the person alluded to in said affidavit." That he " recollects and states the fact to be, that the person seen by deponent at Sing Sing in 1871, was stouter and had a fuller face than the plaintiff when seen by deponent at Kingston, as mentioned in said affidavit. That the person seen by deponent at Sing Sing had no stammering or impediment in his speech, nor infirmity in his gait or walk that were noticed by deponent."

This additional affidavit is highly important, for it not only demonstrates that there is a doubt as to the party at Sing Sing, but it also shows that the plaintiff could not have been that individual. In January, 1867, the plaintiff had a very severe attack of traumatic paralysis, which nearly caused death, and from it he has never recovered. His speech and gait are both very much affected, and, according to his physician (Abraham Crispell), " all of the difficulties or infirmities above described were *very apparent and noticeable* in the year 1871." These peculiarities would, undoubtedly, have been observed and remembered by Childs had he been the person who was at Sing Sing.

Apart then from the evidence of Canter himself, there is absolutely none of the presence of Cole at Sing Sing. That fact, as well as the writing of the note, rests entirely upon the oath of Canter. It is true the fact remains, that some person at Sing Sing saw Canter; but who that person was, and the object of the call, rests with Canter only; and no jury should be allowed to base a verdict upon that alone

Perhaps this further consideration ought not to be overlooked. At the time of the alleged visit of Mr. Cole to Sing Sing there were several persons employed about the prison who knew the plaintiff well. If he had visited Canter there, for the object and purpose claimed, which was at the time disclosed by the convict, all this would have been well known

Cole agt. Cole.

by Cole's acquaintances around the prison, and could not have been kept quiet. Several of those parties reside in Kingston now, and have so resided there for a long time, as their affidavits now used show. This controversy had been before the public for months prior to the trial; and it is remarkable, to say the least, if the story told by Canter was current in Sing Sing in 1871, that the identity of the transactions were not discovered or thought of by any one. It is true that Mr. Laflin, on reading the proceedings of the trial, thinks he recalled it to his mind, but whether the name of the person mentioned by Mr. Russell was then *remembered* to be Cole, or whether it was an impression created by the occurrence as detailed in testimony, Mr. Laflin has not said, nor has he been cross-examined in regard thereto. Certain it is, however, with facts of a startling character which must have been current at Sing Sing, if they ever occurred at all, with several acquaintances of Cole, those facts were not, and are not now remembered by any of them, with the exception of Mr. Laflin, who at this late day gives us the benefit of a conversation with a third person, which cannot and ought not to be received as evidence.

I have not alluded in this opinion to the additional new evidence which the plaintiff presents upon this application, in opposition thereto, that this note was actually in existence prior to May, 1871, at which time Canter says he made it, and the additional admissions of the deceased. I have not alluded to it because I deem it unnecessary. No rule of law and no principle of judicial fairness would justify me in overturning a verdict so fully sustained by credible testimony, in order to submit to another jury the question whether they would not believe what must, on a trial, be the unsustained evidence of a professional forger (*i. e.*, a writer of lies, which by the act of passing he declares genuine) of twenty years standing, than that of reputable witnesses.

The motion for a new trial is denied, with costs.